IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| DAVID W., <br><br>                      **Plaintiff,** <br><br>     vs. <br><br>MARTIN O'MALLEY, <br>**Commissioner of Social Security,** <br><br>                      **Defendant.** | **Court No. 2:23-cv-00249-DBP** <br><br>**MEMORANDUM DECISION AFFIRMING DECISION OF COMMISSIONER** <br><br>**Magistrate Judge Dustin B. Pead** |

All parties in this case have consented to the undersigned conducting all proceedings.[1] Pursuant to 42 U.S.C. § 405(g), Plaintiff David W[2] (Plaintiff) seeks judicial review of the decision of the Commissioner of Social Security (Commissioner) denying his claims for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act (Act).

After careful review of the record, the parties' briefs,[3] and arguments presented a hearing held on January 22, 2024,[4] the undersigned concludes that the Commissioner's decision is

---

[1] ECF No. 5, Notice of Consent; 28 U.S.C. § 636(c).

[2] Based on privacy concerns regarding sensitive personal information, the court does not use Plaintiff's last name. Privacy concerns are inherent in many of the Federal Rules. *See* Fed. R. App. P. 25(a)(5); Fed. R. Civ. P. 5.2; Fed. R. Crim. 49.1.

[3] ECF No. 15, Plaintiff's Brief; ECF No. 20, Commissioner's Response; ECF No. 21, Plaintiff's Reply.

[4] ECF No. 28, Minute Entry for Argument.

1

supported by substantial evidence. Accordingly, for the reasons stated on the record at the hearing and as discussed below, the court hereby AFFIRMS the decision of the Commissioner and DENIES Plaintiff's Motion for Review of Social Security Agency Action.[5]

## **BACKGROUND**

Plaintiff applied for benefits in July 2021, alleging disability beginning December 19, 2020 due to back pain, diabetes, sleep apnea, shoulder and knee problems, and high blood pressure.[6] After a September 20, 2022 hearing,[7] Administrative Law Judge Preston Mitchell (ALJ) issued an October 4, 2022 Decision finding that Plaintiff was not disabled and denying an award of benefits.[8]

In reaching his Decision, the ALJ followed the Commissioner's five-step sequential evaluation process for disability claims.[9] As relevant here, the ALJ found at step two that Plaintiff had impairments that qualified as "severe," including the following: degenerative disc disease of the lumbar and cervical spine with ankylosing spondylitis and radiculopathy; diabetes mellitus; drop foot; left shoulder tendinosis, rotator cuff tear, and osteoarthritis; and obesity.[10] At step three, the ALJ found those impairments did not meet or medically equal a per se disabling impairment from 20 C.F.R. Part 404, Subpart P, Appendix 1 (the listings).[11]

---

[5] ECF No. 15, Plaintiff's Motion for Review of Social Security Agency Action.
[6] Certified Administrative Transcript (Tr.) 215-24, 246.
[7] Tr. 33-64.
[8] Tr. 14-32.
[9] Tr. 14-32; *see* 20 C.F.R. § 404.1520(a)(4) (outlining the process).
[10] Tr. 20.
[11] Tr. 20-21.

Between steps three and four, the ALJ assessed Plaintiff's Residual Functional Capacity (RFC), finding that Plaintiff was limited to sedentary work, with no climbing ladders or scaffolds taller than a two-three step stepladder; occasional climbing, balancing, stooping, kneeling, crouching, and crawling; occasional overhead reaching; frequent reaching in all directions; and frequent handling and fingering.[12] At step five, the ALJ found that Plaintiff was unable to perform his past relevant work, but that his RFC would allow Plaintiff to perform other work existing in significant numbers in the national economy including the representational occupations of account clerk, touch up screener and final assembler.[13]

Based thereon, the ALJ concluded that Plaintiff was not disabled under the Act from his December 19, 2020 date of disability through the date of the decision.[14]

## STANDARD OF REVIEW

Judicial review of the Commissioner's disability determination "is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence."[15] "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[16] The threshold for evidentiary sufficiency under the substantial evidence standard

---

[12] Tr. 21; *see* 20 C.F.R. §§ 404.1545(a)(1) ("Your residual functional capacity is the most you can still do despite your limitations."), 404.1567(a) (defining sedentary work).

[13] Tr. 26-27.

[14] Tr. 27.

[15] *Noreja v. Soc. Sec. Comm'r*, 952 F.3d 1172, 1177 (10th Cir. 2020) (quotation and citation omitted).

[16] *Id*. at 1178; *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019).

is "not high."[17] Under this deferential standard, the Court may neither reweigh the evidence nor substitute its judgment for that of the ALJ.[18] The Court's inquiry "as is usually true in determining the substantiality of evidence, is case-by-case," and "defers to the presiding ALJ, who has seen the hearing up close."[19] In general, the Court should not upset the agency's decision so long as "the agency's path may reasonably be discerned."[20]

## FINDINGS AND CONCLUSIONS

On appeal, Plaintiff argues that the ALJ's RFC determination was not supported by substantial evidence, particularly when the ALJ improperly evaluated the opinion of a primary care physician, Edward Schultz, M.D. The Court addresses Plaintiff's arguments and, for the reasons discussed below, finds that the ALJ's decision should be affirmed. **A. Substantial evidence supports the ALJ's RFC assessment.**

The Court concludes the ALJ's assessment of Plaintiff's RFC was supported by substantial evidence. In particular, the RFC assessment addressed the claimant's reported symptoms.[21] "Since the purpose of the [symptom] evaluation is to help the ALJ assess a claimant's RFC, the ALJ's [symptom] and RFC determinations are inherently intertwined."[22]

---

[17] *Biestek*, 139 S. Ct. at 1154.

[18] *See Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014).

[19] *Biestek*, 139 S. Ct. at 1157.

[20] *Garland v. Dai*, 141 S. Ct. 1669, 1679, 210 L. Ed. 2d 11 (2021) (citation and internal quotation omitted); *Davis v. Erdman*, 607 F.2d 917, 918 n.1 (10th Cir. 1979).

[21] *See* 20 C.F.R. § 404.1529; Social Security Ruling (SSR) 16-3p, 2017 WL 5180304.

[22] *Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009).

Plaintiff claimed to experience debilitating symptoms, including chronic pain in his neck, shoulder, and back. The ALJ, however, concluded that Plaintiff's reported symptoms were inconsistent with other evidence.[23] This finding is due "particular deference" by the Court[24] and the Court must uphold an ALJ's symptom evaluation when it is supported by substantial evidence.[25] The Court should find that "no substantial evidence" supports an ALJ's decision only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence."[26]

Such is not the case here. Rather, the ALJ gave well-supported reasons for concluding that Plaintiff's reported symptoms were not as severe as he claimed, including the efficacy of Plaintiff's treatment and improved and/or stable clinical findings.[27]

"[O]bjective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms . . . ."[27] Here, the ALJ reviewed and considered the objective medical evidence regarding Plaintiff's physical impairments.[28] The ALJ discussed imaging of Plaintiff's neck, back, and shoulder, along with EMG findings.[29] He observed that Plaintiff had several clinical deficits during the relevant period, including a left foot drop,[30] loss

---

[23] Tr. 21-24.

[24] *White v. Barnhart*, 287 F.3d 903, 910 (10th Cir. 2002).

[25] *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005).

[26] *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992).

[27] SSR 16-3p, 2017 WL 5180304, at *5; see 20 C.F.R. § 404.1529(c)(4) ("[W]e will evaluate your statements in relation to the objective medical evidence.").

[28] Tr. 22-23.

[29] Tr. 22-23 citing Tr. 333, 337, 338, 368, 743.

[30] Tr. 22 citing Tr. 338.

of motion of his spine,[31] tenderness of the spine,[32] abnormal reflexes,[33] and decreased strength of the left leg and left shoulder.[34] However, the ALJ also correctly pointed out that Plaintiff was

---

[27] Agency regulations lay out multiple factors that an ALJ must consider when evaluating a claimant's symptoms. *See* 20 C.F.R. § 404.1529. However, there is a "difference between what an ALJ must consider as opposed to what he must explain in the decision." *Mounts v. Astrue*, 479 F. App'x 860, 866 (10th Cir. 2012) (unpublished). As such, an ALJ is not required to go factor by factor through the evidence, discussing how the evidence relates to each factor. Instead, the ALJ need only set forth the specific evidence on which he relied. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000); *Poppa*, 569 F.3d at 1171.

able to walk with the use of an ankle brace,[36] and on multiple occasions, Plaintiff exhibited normal strength and sensation.[37]

After detailing the objective evidence of record, the ALJ considered several other factors, including Plaintiff's ongoing activities of daily living and treatment history.[38] Regarding treatment, the ALJ correctly noted that Plaintiff's back issues remained largely stable with conservative treatment, and his neck issues improved with surgery[35] Indeed, the record confirmed that as of his alleged onset date in December 2020, Plaintiff was involved in treatment with a primary care provider, endocrinologist, and orthopedic specialist.[36] Plaintiff was not

---

[31] Tr. 22 citing Tr. 338-40.

[32] Tr. 23 citing Tr. 732-34.

[33] Tr. 22-23 citing Tr. 338-40.

[34] Tr. 23 citing Tr. 727-28, 764-65.
[35] Tr. 22-23.

[36] *See* Tr. 338, 467, 471.

referred for another surgery on his back[37] but was advised to use over-the-counter pain medications to control his symptoms.[38] Further, Plaintiff did not begin to complain of neck pain until June 2021,[39] and he did not return to his surgeon until August 2021.[44] Plaintiff eventually required surgery on his neck,[40] but the record demonstrates that he benefitted from that intervention.[41]

---

[36] Tr. 22 citing Tr. 338.

[37] Tr. 23 citing Tr. 619, 764.

[38] Tr. 16; see 20 C.F.R. § 404.1529(c)(3)(i), (iv), (v) & (c)(4) (daily activities, medications, treatment, and inconsistencies in the evidence are factors used by ALJs in considering subjective symptoms).

The ALJ also noted that despite complaints of pain Plaintiff was able to care of himself, perform normal chores, go shopping, and even engage in some work activity, all activities that indicated that Plaintiff was not as limited as he claimed to be.[42] This was reasonable information to consider when assessing Plaintiff's complaints of debilitating pain.[43]

---

[37] Tr. 340.

[38] Tr. 340.

[39] Tr. 445 [44]

Tr. 521.

[40] Tr. 537-38.

[41] Tr. 617, 732; see Qualls, 206.F.3d at 1372-73 (the ALJ could reasonably consider the claimant's course of treatment in finding the claimant was not as limited as he claimed); see also Poppa,

[42] Tr. 24 citing Tr. 33-64, 271-79, 289-97.

[43] See Wilson v. Astrue, 602 F.3d 1136, 1146 (10th Cir. 2010) (ALJ reasonably found a claimant's

Overall, the ALJ considered Plaintiff's physical impairments and reasonably found he could perform a reduced range of sedentary work,[44] which was "a significantly restricted range of work reserved for individuals who had "very serious functional limitations."[45] The ALJ based his findings on the record as a whole, and provided adequate articulation for his reasoning by referencing both the evidence he found most compelling and the "uncontroverted evidence [he chose] not to rely upon."[46] The ALJ properly considered the objective evidence, subjective complaints, the type and effectiveness of treatment, activities of daily living, and opinions of record.[47]

Although Court finds that some of the evidence of record was suggestive of greater limitations and some evidence was suggestive of lesser limitations, as factfinder, the ALJ

---

569 F.3d at 1171 n.3 (upholding an ALJ's credibility finding where, among other factors, an ALJ noted a claimant had positive straight leg raise testing before surgery but negative straight leg raise testing after surgery).

reasonably resolved those inconsistencies and concluded that Plaintiff, though significantly limited, remained capable of a restricted range of sedentary work without mental limitations.[48]

---

description of her daily activities did not indicate significant limitations, where, among other things, the claimant could care for herself, her home, and her children, drive, and engage in activities outside of her home).

[44] Tr. 21.
[45] SSR 96-9p, 1996 WL 374185, at *3.
[46] Tr. 21-25; *Wall v. Astrue*, 561 F.3d 1048, 1067 (10th Cir. 2009).
[47] Tr. 21-25.
[48] *See Allman v. Colvin*, 813 F.3d 1326, 1333 (10th Cir. 2016) ("[T]he record contains support for

8

**The ALJ properly evaluated all opinions of record, including the opinion of Dr. Schultz.**

Because Plaintiff filed his DIB application after March 27, 2017, the ALJ applied a new set of regulations for evaluating medical evidence that differs substantially from prior regulations.[49] Under the revised regulations, for each medical opinion and prior administrative medical finding, the ALJ must articulate consideration of (1) its persuasiveness, (2) the supportability factor, and (3) the consistency factor.[50] Here, the ALJ's evaluation of the medical opinions and prior administrative medical findings is legally sound and supported by substantial evidence.

Dr. Schultz was Plaintiff's primary care provider and saw him throughout the relevant period.[51] In July 2021, Dr. Schulz opined Plaintiff could not sustain a range of sedentary work.[52] Dr. Schulz specifically noted that Plaintiff could only sit for thirty minutes total in a workday, stand and/or walk for one hour total in a workday, never lift any amount of weight, never reach

---

both the notion that [the claimant] has extreme deficiencies . . . and the notion that his . . . limitations are not that severe. The ALJ was entitled to resolve such evidentiary conflicts and did so." (citation omitted)).

[49] *See* AR 13 (noting application date), 19-20); *see Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5, 844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15,132 (Mar. 27, 2017)).

[50] *See* 20 C.F.R. § 404.1520c(b).

[51] *See* Tr. 421-22, 442-44, 445-47, 628-30.

[52] Tr. 421-22.

with his arms, and only use his hands and fingers for 25 percent of the workday.[53] Additionally, Dr. Schultz opined that Plaintiff would need unscheduled breaks every fifteen to thirty minutes, and would be absent from work entirely more than four times a month.[54] The ALJ pointed out that Dr. Schultz's opinion was very restrictive, stating that he had opined restrictions that would essentially "render [Plaintiff] bedridden."[55]

The ALJ properly considered the supportability and consistency of Dr. Schultz's opinion by comparing it to Dr. Schultz's own treatment notes and other evidence of record.[56] First, regarding supportability, the ALJ determined that the opinion was "unsupported" by Dr. Schultz's "own physical examination findings."[57] The ALJ cited to one examination in June 2021, one month before Dr. Schultz's offered opinion.[58] The ALJ indicated that those limited exam findings—including findings of a left foot drop—were not consistent with the extremely restrictive opinion that was offered by Dr. Schultz.[59]

While the Court would have preferred for the ALJ to provide additional citations to the record in comparing Dr. Schultz's opinion to his own treatment notes, he was not required to do so.[60] Notably, the ALJ referenced the Plaintiff's longitudinal treatment with Dr. Schulz in other

---

[53] 58 Tr. 421.

[54] Tr. 421-22.

[55] Tr. 25.

[56] Tr. 25.

[57] Tr. 25.

[58] Tr. 25 citing 446.

[59] Tr. 25.

[60] *See Endriss v. Astrue*, 506 F. App'x 772, 777 (10th Cir. 2012) (unpublished) ("The ALJ set

10

areas of his decision.[61] In fact, in detailing the objective evidence, the ALJ mentioned examination findings from a December 2020 primary care appointment with Dr. Schultz, explaining that Plaintiff had a left foot drop, but was not tripping.[62]

After establishing Dr. Schulz's own treatment notes did not support his opinion, the ALJ also concluded that the other evidence of record—including orthopedic examination findings, an opinion from an orthopedic provider, and activities of daily living—was not consistent with the overly restrictive opinion.[63] The ALJ highlighted the fact that Dr. Spina, one of Plaintiff's orthopedic providers, noticed some clinical deficits, but still opined that, as of January 2022, Plaintiff could lift 15 to 20 pounds.[64] He also explained that while Dr. Schultz essentially opined that Plaintiff could not lift any weight, stand, walk, or sit for any length of time during the day, Plaintiff himself was able to sit through a hearing, engage in some work activity, go shopping, and perform normal household chores.[65]

---

forth a summary of the relevant objective medical evidence earlier in his decision and he is not required to continue to recite the same evidence again in rejecting [an] opinion.").

[61] See Tr. 22-23.

[62] Tr. 22-23 citing Tr. 471.

[63] Tr. 25 citing Tr. Tr. 33-64, 271-79, 289-97, 338-39, 514, 619, 727-28.

[64] Tr. 25 citing Tr. 619. As discussed at oral argument, the ALJ's Decision does not address Plaintiff's September 2022 nerve conduction study with Dr. Cushman. Plaintiff argues this failure warrants remand because the nerve conduction study must be addressed. However, as discussed at the hearing, the Court adopts the Commissioner's position that the ALJ need not cite to all evidence of record and that inclusion of the study would not alter the already restrictive RFC which provides for sedentary work with manipulative restrictions for both arms.

[65] Tr. 25 citing Tr. 33-64, 271-79, 289-97.

The ALJ's decision lacked some clarity about how the claimant's activities of daily living were inconsistent with Dr. Schultz's opinion. Yet even the cited activities of daily living, while conservative, stood in contrast to Dr. Schultz's very restrictive opinion.

Overall, the ALJ reviewed the objective and other relevant evidence. In doing so, the ALJ followed the regulations and evaluated all opinions of record, including the opinion of Dr. Schultz. The ALJ reasonably determined that Plaintiff retained the capacity to perform a range of sedentary work. Ultimately, it was Plaintiff's burden to prove that he required additional limitations and he was unable to do so.[66] While Plaintiff points to some abnormal findings in the record that could support greater limitations, including more restrictive exertional limitations,[67] "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo."[68]

## CONCLUSION

For the reasons discussed above, the Court AFFIRMS the Commissioner's decision denying Plaintiff's claim for disability benefits and DENIES Plaintiff's Motion for Review of Social Security Agency Action.[69]

---

[66] 20 C.F.R. § 404.1512(c).

[67] *Alarid v. Colvin*, 590 F. App'x 789, 795 (10th Cir. 2014) ("In citing what he contends is contrary evidence, Mr. Alarid is asking us to reweigh the evidence, which we cannot do").

[68] *Lax v. Astrue,* 489 F.3d 1080, 1084 (10th Cir. 2007) (internal quotation marks and citation omitted).

[69] ECF No. 15, Plaintiff's Motion for Review of Social Security Agency Action.

Dated this 7th day of February, 2024.

_____
Dustin B. Pead, U.S. Magistrate Judge